UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| EDMAR F. PINTO, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | Civil Action No. 12-11332-LTS |
|  | ) | |
| HSBC BANK, N.A., | ) | |
|  | ) | |
| Defendant. | ) | |

ORDER ON DEFENDANT'S MOTION TO DISMISS

December 18, 2012

SOROKIN, C.M.J.

The Defendant, HSBC Bank, N.A., moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all five counts of the Plaintiff, Edmar F. Pinto's Complaint as failing to state a claim upon which relief may be granted. Docket # 6. For the following reasons, the Motion is ALLOWED IN PART and DENIED IN PART.

The case arises from a mortgage loan obtained by Pinto on his home and from a subsequent foreclosure sale of that property. Docket # 1-3. The relevant facts are drawn from the Complaint and from the exhibits incorporated therein.[1] In keeping with the standard of review applicable to motions to dismiss brought pursuant to Rule 12, the Court recites these facts

---

[1] In reviewing a Rule 12 motion to dismiss, the Court may consider "not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice." In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 15 (1st Cir.2003). Pinto attached seven exhibits to his Complaint. Docket # 1-3 at 17-35.

1

as if true.

On August 31, 2006, Pinto granted a mortgage to the Mortgage Electronic Registration Systems, Inc. (MERS) to secure a loan from Lancaster Mortgage Bankers, LLC on his residential property in Everett, Massachusetts.  Docket # 1-3 at ¶¶ 1, 3.  On March 24, 2010, MERS executed an assignment of its interest to HSBC "as Trustee for Nomura Asset Acceptance Corporation Mortgage Pass-Through Certificates Series 2006-AR4."  Id. at ¶ 4.  The Assignment was recorded with this language in the Middlesex Registry of Deeds.  Id.  Pinto alleges that the mortgagee was incorrectly named in the assignment because the correct name is actually "Nomura Asset Acceptance Corporation *Alternative Loan Trust* Series 2006-AR4."  Id. at ¶ 5 (emphasis in original) (citing http://www.secinfo.com/dqTM6.uJk.htm).[2]  On October 26, 2010, HSBC conducted a foreclosure of Pinto's property (repeating what Pinto regards as an error in the name of the mortgagee).  Id. at ¶ 8.  On December 20, 2011, HSBC executed a foreclosure deed, which it recorded with the same language on February 24, 2012.  Id. at ¶ 9.

Pinto further alleges that in 2010, he made application to HSBC for a loan modification.  Id. at ¶ 12.  He received a trial loan modification from HSBC and made all the required payments.  Id. at ¶ 13.  On August 19, 2010, HSBC's servicer requested additional income information from Pinto, but HSBC denied his application for a loan modification just six days later based on the failure to send the requested information.  Id. at ¶¶ 14-15 (citing Docket # 1-3 at 33, 35)

---

[2] Pinto argued at the hearing of this matter that the entity identified in the assignment and subsequent filings does not exist.  The document cited provides in part at Item 1.01, "On November 30, 2006, a series of certificates, entitled Nomura Asset Acceptance Corporation, Alternative Loan Trust, Series 2006-AR4, Mortgage Pass-Through Certificates (the 'Certificates'), were issued pursuant to a pooling and servicing agreement . . ."

Count I of Pinto's Complaint alleges a claim for wrongful foreclosure in that pursuant to M.G.L. c. 244 § 14, only a mortgagee may foreclose on the property of a mortgagor, and because HSBC "has failed to comply with the requirements of the stature in failing to properly list in any document the correct name for the Trust for which they claim is the holder of the Plaintiff's mortgage." Id. at ¶ 27.

In the remaining counts of his Complaint, Pinto alleges various contract-based claims. In Count II, he alleges a breach of contract arising both from the foreclosure (which the mortgage provided could be conducted only in accordance with applicable law), and from HSBC's failure to properly review Pinto for a loan modification. Id. at ¶¶ 28-37. Count III is for violation of the implied covenant of good faith and fair dealing, for the same reasons. Id. at ¶¶ 38-45. Count IV is for Promissory Estoppel, for Pinto's reliance on HSBC's promise to properly review his loan modification application. Id. at ¶¶ 48-51. Count V seeks an injunction barring HSBC from evicting Pinto from the subject property. Id. at ¶¶ 52-55.

Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, — U.S. —, 129 S.Ct. 1937, 1949 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court "must accept all well-pleaded facts alleged in the Complaint as true and draw all reasonable inferences in favor of the plaintiff." Watterson v. Page, 987 F.2d 1, 3 (1st Cir.1993). This "highly deferential" standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir.1992).

Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir.1997)(quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir.1988) (internal quotation marks omitted). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Iqbal, 129 S.Ct. at 1949. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. The Court's assessment of the pleadings is "context-specific," requiring "the reviewing court to draw on its judicial experience and common sense." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir.2009)(quoting Iqbal, 129 S.Ct. at 1949). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief." Id.

### Wrongful Foreclosure

The Complaint does not plausibly allege that a wrongful foreclosure has occurred. As Pinto concedes, HSBC took assignment for the trust named in the assignment. This trust plainly held Pinto's mortgage. All of the subsequent proceedings occurred on behalf of this trust. Thus, this is not a case in which the notice failed to identify the holder of the mortgage – rather it identified the exact name listed on the assignment. Compare Bottomly v. Kabachnick, 13 Mass. App. Ct. 480, 484 (1982) (invalidating foreclosure sale arising from a notice that failed to state the name of the holder of the mortgage).

Perhaps a liberal reading of the Complaint permits the inference that Pinto alleges that

the entity named in the assignment does not exist at all, or, that the entity named in Paragraph Five of the Complaint actually received the mortgage assignment rather than the entity named in Paragraph Four. The latter theory fails to state a claim in the face of the record of consistent usage of the name used in Paragraph Four (beginning in the assignment and continuing through all of the foreclosure-related proceedings in state court).

Insofar as Pinto argues in the alternative that the name listed on the assignment and in the subsequent foreclosure-related papers, (i.e., HSBC "as Trustee for Nomura Asset Acceptance Corporation Mortgage Pass-Through Certificates Series 2006-AR4") identifies an entity that does not exist, that assertion is belied by the very evidence cited by Pinto because the S.E.C. document cited refers to the trust in question by using all of the language that appears in the assignment and in the subsequent filings. See n. 2, supra. The fact that Pinto identifies an additional three words which also correctly describe the trust, but which do not appear in the assignment, does not itself render the reference in the assignment incorrect. For example, an assignment to an individual referred to therein as "John Smith" would not be invalidated solely because a separate document existed referencing the middle name of that individual. There is here no question that the trust referenced in the assignment and the trust Pinto asserts holds the mortgage are one and the same, and that all of the language contained in the assignment was correct.

Pinto points especially to Silva et al. v. Deutsche Bank National Trust Company as Trustee For Morgan Stanley Ixis Real Estate Capital Trust 2006-2, Middlesex Superior Court Civil Action No.12-3951-H, (Mass.Super. November 14, 2012) (Wilson, J.). Docket # 12. Pinto asserts that the Silva case stands for the proposition that any error whatsoever in the name of a

5

mortgagee in the notice of foreclosure (even a missing apostrophe or an obvious typographical error) would serve to invalidate a foreclosure because Massachusetts law requires strict compliance with M.G.L. c. 244.  Thus, because the Notice in this case identifies as the mortgagee a trust which Pinto asserts does not exist, Pinto asserts there is not strict compliance with the statute.

The record before the Court belies the claim that the trust does not exist and is incorrectly named in the assignment and the subsequent foreclosure-related documents.  The holding of Silva is in any event is more nuanced than Pinto suggests.  In Silva, the Notice of Foreclosure was defective in several respects: (1) there was no address provided for the mortgagee, but only for the servicer; (2) the Notice did not indicate that Deutsche Bank was mortgagee not in its own right, but rather as trustee for a particular trust; and, (3) the mortgagee was not identified as such, but rather as "creditor."  Docket # 12 at 5.  Thus, even though the Notice satisfied the legislative purposes behind M.G.L. c. 244 (i.e., giving the borrowers sufficient information to contact the mortgagee), the Notice was nevertheless defective and not in strict compliance with the statute. Id. at 5-6.  This was because the Notice failed to do specific things required by the statute such as naming the mortgagee and providing its address.  Id.  "Strict compliance would require that Deutsche Bank be identified as the mortgagee, not just the creditor, and the Notice does not do that."  Id. at 6.  "[O]mitting the address of the mortgagee means the Notice did not meet the requirement of 'strict compliance' with the statutory requirements."  Id. at 7.  In this case, however, the Notice suffered from none of these defects.  The information contained in the Notice was in every respect accurate, with the exception of the omission of the three words identified by Pinto.   This omission is not of significance in this context.

**Contract Theories**

Count II alleges a breach of the mortgage contract by virtue of HSBC's failure both to foreclose in accordance with legal requirements, and to review properly Pinto's application for a permanent loan modification under HAMP in compliance with either the terms of a Consent Order or the HAMP program.

To the extent premised upon a wrongful foreclosure, the claim fails for the reasons described, supra.  To the extent premised upon the failure to properly review the loan modification application, the HAMP program does not give rise to an implied private right of action or to a property interest in a loan modification.  See, e.g., Young v. Wells Fargo Bank, N.A., 2012 WL 734187, *4 (D. Mass. March 7, 2012) (Sorokin, C.M.J.) (citing Brown v. Bank of Am. Corp., 2011 WL 1311278, *4 (D. Mass. Mar. 31, 2011)(O'Toole, J.)); In re Fernandes, 446 B.R. 6, 8-9 (D.Mass. January 31, 2011) (collecting cases) (Bailey, J.); In re Cruz, 446 B.R. 1, 4 (D.Mass. January 26, 2011) (collecting cases) (Hoffman, J.).

Nor may the Consent Order referenced in the Complaint (see, Docket # 1-4 at ¶¶ 16-17) provide any basis for recovery in contract, since it specifically disclaims the possibility of such remedies arising from its terms. See, April 1, 2011 HSBC Consent Order, Article II (7), at http://www.occ.gov/news-issuances/news-releases/2011/nr-occ-2011-47d.pdf ("Nothing in this Stipulation or the Consent Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under this Stipulation or the Consent Order").  Finally, Pinto argues that a contract arose out of HSBC's offer of a Trial Payment Plan (TPP), his acceptance in the form of payments, and HSBC's acceptance of these payments such that HSBC was obligated "to follow

the guidelines of the [HAMP] program to determine eligibility." Docket # 11 at 12 (citing Bosque v. Wells Fargo, 762 F.Supp.2d 342, 351-53 (D.Mass. January 26, 2011) (Saylor, J.) (a signed TPP agreement may constitute a binding contract). Although Pinto has not alleged that the Parties executed a signed TPP agreement, he has alleged offer and acceptance of such a plan, (see Docket #1-3 at ¶ 31). Accordingly, the Motion to Dismiss is DENIED INSOFAR as Count II pleads a breach of a TPP contract and ALLOWED INSOFAR as Count II pleads a breach of contract arising out of the HAMP program generally, or out of the Consent Order.

Count III alleges a breach of the implied covenant of good faith and fair dealing. Pinto's allegations are sufficient, at this stage, to allege a breach of the covenant implied in the TPP agreement (see Bosque, 762 F.Supp.2d at 353), and to that extent the Motion is DENIED. In all other respects the Motion is ALLOWED for the reasons previously stated.

Count IV alleges a promissory estoppel claim premised on HSBC's alleged failure to review Pinto's documents for a loan modification in a proper fashion. In Massachusetts "circumstances that may give rise to an estoppel are: "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." Anzalone v. Admin. Office of Trial Court, 457 Mass. 647, 661 (2010). Here, Pinto has not alleged that HSBC made any specific actionable representation. The estoppel claim is an alternative theory in the event of a lack of consideration. In light of the Court's ruling finding consideration to support the contract in Count II, the Court need not now consider the alternate estoppel theory at this time. See Bosque, 762 F.Supp.2d at 353. The motion is DENIED with respect to Count IV.

Count V seeks an injunction barring HSBC from proceeding with a Summary Process Action against Pinto. HSBC seeks dismissal arguing that <u>Younger</u> doctrine requires the Court to abstain and that the Anti-Injunction Act prohibits this Court from providing the requested relief. Pinto asserts that <u>Younger</u> is inapplicable both because the summary process action is stayed (and thus not on-going) and because the Housing Court lacks jurisdiction to consider the HAMP related claims. The Parties' argument at the hearing on this motion suggested that there is some dispute as to the status of the state court action. Although the Court notes that it is skeptical with respect to Pinto's ability to overcome the Younger and Anti-Injunction issues raised by HSBC (<u>see</u>, <u>e.g.</u>, <u>Seidel v. Wells Fargo Bank, N.A.</u>, 2012 WL 2571200) (D.Mass. July 3, 2012) (Zobel, J.), it is not necessary to resolve these questions at this time, because no motion for injunctive relief is currently pending before the Court. Accordingly, the motion is DENIED, WITHOUT PREJUDICE with respect to Count V.

<u>CONCLUSION</u>

HSBC's Motion to Dismiss (Docket # 6) is: ALLOWED with respect to Count I; ALLOWED with respect to Count II only insofar it pleads a breach of contract arising out of the HAMP program generally, or out of the Consent Order, but is otherwise DENIED; is DENIED with respect to Count III to the extent the Count is premised upon a breach of the covenant implied in the TPP agreement, but is OTHERWISE ALLOWED; is DENIED with respect to Count IV; and is DENIED, WITHOUT PREJUDICE with respect to Count V.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
Chief United States Magistrate Judge